UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACOBY MAIZE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15364** |
| **SUE ELLEN MONFRA, ET AL** | **SECTION "G" (4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.  Factual and Procedural Background

The plaintiff, Jacoby Maize ("Maize"), is an inmate housed at the Louisiana State Penitentiary at the time of the filing of this *pro se* and *in forma pauperis*, complaint under 42 U.S.C. § 1983. Maize filed this complaint against Sue Ellen Monfra and Sheriff Newell Norman. R. Doc. 1.

Maize states that he was formally housed at Claiborne Correctional Center as a Department of Corrections inmate serving a ten year sentence for possession of contraband. *Id.* at p. 7. He was then brought to Jefferson Parish on or about June 25, 2015, awaiting a trial before Judge Sullivan in the 24th Judicial District Court. *Id.* Maize states that he remained housed in the Jefferson Parish facility until April 25, 2016. *Id.* While there, Maize further states he received a six month contempt of court sentence with a released date of July 7, 2016. *Id.* He states that it was his understanding that after serving that six month sentence he would be returned to the Claiborne Correctional Center to serve the remainder of this ten year sentence. *Id.* However, during that time, Maize states

that he was found guilty of second degree murder and aggravated arson, receiving a life sentence. *Id.*

While being held in protective custody after sentencing, Maize states that he spoke directly with Chief Sue Ellen Monfra of the Jefferson Parish Correctional Center and requested to be sent back to Claiborne Correctional Center after his contempt sentence ended. *Id.* Maize alleges that Chief Monfra denied his request, stating that he could not go back to Claiborne Correctional Center given all of the civil complaints Maize had filed. *Id.* Maize further alleges that Chief Monfra told him that he would be lucky if she did not send him to Hunt Correctional. Maize then states he informed Chief Monfra that his personal property, legal mail, and documents were all located at Claiborne Correctional Center. He states that he was then told by Chief Monfra that he would be sent to Angola to serve his life sentence and that he could "get your property the best way you can." *Id.* Thereafter, Maize alleges that he was transferred to Hunt Correctional without his property as a reprisal for filing civil complaints against Chief Monfra in the past. *Id.* Maize states that he has lost 278 photographs, legal mail, educational material, and personal belongings, including Maize's wedding ring, watch, and religious medallion. *Id.* at p. 8. Maize seeks $150,000 in damages for lost family heirlooms; $8,500 lost personal property; $50,000 for mental anguish; and all other damages for the violation of his right to be free from retaliation. *Id.*

## II.  Standard of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte*

dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.   Analysis**

    **A.   Newell Norman**

Maize has named Sheriff Norman as a defendant, seeking to hold him liable in his supervisory role. However, a supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the

alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980).

Maize has not alleged that Sheriff Norman was personally involved in the acts about which he complains. Without some personal action or connection which would render Sheriff Norman liable under § 1983, Maize's claims against Sheriff Norman as a supervisory official are frivolous and otherwise fail to state a claim for which relief can be granted.[1]

### B.   Sue Ellen Monfra

Maize has also asserted claims against Chief Monfra, claiming that she retaliated against him for filing complaints against her in the past. R. Doc. 1, p. 7. In particular, Maize alleges that Chief Monfra had him transferred to Hunt Correctional, which resulted in the loss of his personal property. *Id.*

To prove a retaliation claim under § 1983, a prisoner plaintiff must establish: (1) a specific constitutional right at issue; (2) the defendant's intent to retaliate against the prisoner for his exercise of that right; (3) a retaliatory adverse action; and (4) causation. *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999) (citing *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir.1998)). The Fifth Circuit has also cautioned that "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995).

The inmate must prove more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir.1997). Instead, the inmate must show causation by proving that "but for the retaliatory motive the complained of incident ... would not have

---

[1] Maize also has not alleged that he has suffered any constitutional injury directly resulting from any order, training, or other policy implemented by Norman which would create liability under § 1983.  *See* Johnson *v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

4

occurred." *Woods,* 60 F.3d at 1166. This is recognized as a "significant burden" that requires the inmate to "produce direct evidence of motivation or, the more probable scenario. . .'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.* (quoting *Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir.1988)); *Randle v. Woods,* 299 F. App'x 466, 468 (5th Cir.2008); *Shelton v. Lemons,* No. 11–20670, 2012 WL 3493982, at *2 (5th Cir. Aug. 15, 2012).

Under these standards, the inmate must point to a specific constitutional right that has been violated as a direct result of the retaliatory action. *Tighe v. Wall,* 100 F.3d 41, 42 (5th Cir.1996); *Woods,* 60 F.3d at 1166. An adverse action under the third prong is an act "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell,* 449 F.3d 682, 686 (5th Cir.2006). The Fifth Circuit has stated that "this threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials." *Id.* For this reason, "mere conclusory allegations of retaliation" or a prisoner's own beliefs are insufficient to establish retaliation. *Jones,* 188 F.3d at 325; *see also Randle,* 299 F. App'x at 468.

Here, Maize asserts that Chief Monfra retaliated against him by transferring him to Hunt Correctional instead of back to Claiborne Correctional because Maize had filed a number of complaints and lawsuits against her and the Jefferson Parish Correctional Center in the past. R. Doc. 1, p. 7. And, indeed, it is well settled that prison officials may not retaliate against a prisoner for exercising his First Amendment right to complain through proper channels about a prison official's misconduct. *Morris,* 449 F.3d at 684; *Woods,* 60 F.3d at 1164. Nonetheless, Maize's claim must fail because he cannot show a retaliatory motive for his transfer or that, but for a retaliatory motive, his transfer would not have occurred. *See Maize v. Monfra*, No. 12-2619, 2013 WL 2154034, at *10 (E.D. La. 2013) "Louisiana Revised Statute § 15:566(B) sets forth the

5

[procedures] under which prisoners convicted of state criminal offenses are to be sent to [Department of Corrections] facilities from parish jails. In addition, La. Rev. Stat. Ann. § 15:824, authorizes *the Director of Corrections* to decide which penal institution an inmate should be delivered or transferred." *Washington v. Gusman*, No. 09-6058, 2011 WL 820464, at *5 (E.D. La. Feb. 14, 2011) (footnotes omitted); *see also State v. Sylvester,* 648 So.2d 31, 33 (La.App. 4th Cir .1994) (emphasis in original) ("The legislature by these enactments has manifested a clear intent to leave the physical placement of prisoners within the jurisdiction of the DOC **alone.**"). Having admittedly been convicted and sentenced for second degree murder and aggravated arson, Maize would have been subject to transfer to a Department of Corrections facility at the discretion of the director of corrections and not Chief Monfra. Therefore, despite the allegations that Chief Monfra stated her intent to have Maize transferred in retaliation for Maize's prior complaints/lawsuits, Maize cannot show that the transfer was retaliatory or would not have occurred but for a retaliatory motive because Chief Monfra had no authority to transfer Maize or determine the facility to which Maize would be transferred.

Moreover, in claiming that his First Amendment right to access the courts or complain was retaliated against, Maize "must demonstrate that his position as a litigant was actually prejudiced. . . .[namely] 'his efforts to pursue a legal claim.'" *Maize*, 2013 WL 2154034, at *10 (quoting *Lewis v. Casey,* 518 U.S. 343, 356 (1996)). Maize fails to establish a violation of his First Amendment right of access to the Court. He was fully capable of submitting materials necessary to prosecute this case and make this claim. *See Id.* (citation omitted) ("Maize wholly fails to establish any violation of his First Amendment rights. It is clear that plaintiff has submitted materials sufficient to prosecute this civil case and his other case filed in this court. It must be concluded that his First

Amendment right, which encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court was not violated.").

Even if Maize did allege that his transfer somehow impaired his position as a litigant, he cannot show that any action taken by Chief Monfra resulted in that impairment. *Id.* ("[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation ... of which [plaintiff] complains.") (emphasis added) (quoting *Hart v. O'Brien,* 127 F.3d 424, 446 (5th Cir.1997), *abrogated in part on other grounds as recognized in Spivey v. Robertson,* 197 F.3d 772 (5th Cir.1999)). Because the Department of Corrections and the Director of Corrections have the sole statutory authority to determine placement of inmates in Louisiana, *supra*, Chief Monfra had no authority to order or otherwise direct Maize's transfer and therefore could not have caused the alleged impairment.

Additionally, to the extent that Maize alleges that his rights were violated by Chief Monfra when she did not return him to Claiborne Correctional, the Court further notes that Maize has no constitutional right to decide what facility he would be transferred to. *Washington*, 2011 WL 820464, at *4 (citing *Olim v. Wakinekona*, 461 U.S. 238, 244-45) ("Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function.").[2]

Finally, Maize's claims against Chief Monfra for violating his constitutional rights in the loss of his personal property are also frivolous. Maize alleges that his rights were violated in the loss of his personal property, namely 278 photographs, legal mail, educational material, and other personal belongings including Maize's wedding ring, watch, and religious medallion. R. Doc. 1,

---

[2] Note, Maize has not alleged that he was transferred to a more dangerous facility in connection to his retaliation claim, which the Fifth Circuit has stated could be a serious retaliatory act. *See Morris v. Powell*, 449 F.3d 682, 687 (5th Cir. 2006).

p. 8. Nonetheless, "[t]he deprivation or loss of an inmate's money or property, whether negligent or intentional, is barred from review under § 1983 where an adequate state post-deprivation remedy exists." *Patin v. LeBlanc*, No. 11-3071, 2012 WL 3109402, at *9 (E.D. La. May 18, 2012) (citing *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995)); *accord Wilson v. Holt*, 158 Fed. Appx. 546, 546 (5th Cir.2005). The Fifth Circuit has repeatedly recognized that Louisiana tort laws under La. Civ.Code art. 2315 et seq. provide an adequate remedy for both intentional and negligent deprivations of property. *Hutchinson v. Prudhomme*, 79 Fed. Appx. 54, 55 (5th Cir.2003) (affirming dismissal of prisoner's claim "that prison personnel mishandled and embezzled funds deposited in his inmate account" because Louisiana law provides an adequate post-deprivation remedy); C*opsey v. Swearingen*, 36 F.3d 1336, 1342–43 (5th Cir.1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir.1984).

Therefore, for all of the foregoing reasons, Maize's claims against Chief Monfra are legally frivolous and fail to state a claim for which relief can be granted under § 1983.

## IV.    Recommendation

It is therefore **RECOMMENDED** that Jacoby Maize's § 1983 claims against Sue Ellen Monfra and Newell Norman be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

                          New Orleans, Louisiana, this 7th day of November, 2016.

                          **KAREN WELLS ROBY**
                          **UNITED STATES MAGISTRATE JUDGE**

---

[2] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.